180 So.2d 200 (1965)
CITY OF CLEARWATER, a Municipal Corporation, Appellant,
v.
John W. BONSEY, A.L. Anderson, Robert L. Davis, Lloyd B. Hopkins and Robert A. Freeze, as the County Commissioners of Pinellas County, Florida, Appellees.
No. 5203.
District Court of Appeal of Florida. Second District.
November 16, 1965.
*201 Herbert M. Brown, Norris S. Gould, Clearwater, and Howard P. Macfarlane, Arthur A. Simpson and Wm. Terrell Hodges, of Macfarlane, Ferguson, Allison & Kelly, Tampa, for appellant.
Page S. Jackson and Julian R. Howay, Clearwater, for appellees.
SHANNON, Acting Chief Judge.
This is an appeal by the City of Clearwater from a summary judgment in a declaratory decree action brought by the County Commissioners of Pinellas County. The issue is the validity of a thirty year contract between the County and the City under which the County is to sell water to the City at a specified rate in return for the City's obligation to pay for a fixed daily minimum quantity of water whether actually consumed or not. The lower court granted summary judgment in favor of the County, holding that the provision fixing the rate was in derogation of the duty imposed on the County to prescribe and revise rates whenever necessary.
By virtue of a Special Act of the Florida Legislature (Ch. 29442, Laws of Florida, Special Acts of 1953), Pinellas County was empowered to enlarge its water supply and distribution system. Pursuant to the "power to contract * * * with respect to such undertaking" Pinellas County and the City of Clearwater entered an agreement, the salient portions of which provided that Pinellas County was to supply water to Clearwater for a period of thirty years at the rate of 5 cents per thousand gallons. Water so supplied was to be a supplement to the City's own system. The City agreed to pay the County for a minimum quantity of four million gallons a day whether or not that much was consumed. Amounts actually used by the City over the minimum and up to a daily maximum of ten million gallons were to be charged at the contract price. In addition, the contract provided for a review of the 5 cent rate at the end of any year's billing should the cost of electric power to the County increase or decrease, and that a rate reduction might be effectuated should the City's consumption of County water reach a daily average of five and one-half million gallons. The contract also contained a general clause that the parties might, in the event of unforeseen developments, agree to amend its terms in the future. Both sides have performed under the contract since 1954. The current rate is 5 1/2 cents per thousand gallons, resulting from a 1/2 cent rent increase caused by an increased cost in electric power to the County.
In May, 1963, the Pinellas County Commission passed a resolution declaring that the cost of furnishing water to Clearwater was then 18 cents per thousand gallons, and that this would be the new rate charged if the contract rate could be disregarded. Consequently, the County filed this suit, seeking adjudication of its rights and obligations, if any, under its existing contract with Clearwater.
*202 The action filed by the County was a suit for a declaratory decree. The complaint set forth the contract provisions regarding the 5¢ rate for the thirty year period, and then quoted the material portions of the Special Act empowering the County to fix rates and revise them from time to time whenever necessary. The relevant portions of the Act provided:
"Section 4. Powers of the County.  That in addition to powers which it may now have, Pinellas County shall have power under this Act;
* * * * * *
"(4) To prescribe, fix, establish and collect fees, rentals or other charges for the facilities and services furnished by such water system, or any part thereof, either heretofore or hereafter constructed or acquired on an equitable basis; provided, however, that such fees, rentals or other charges, or any revision thereof, shall be fixed and established by Resolution of the Board of County Commissioners in said County.
* * * * * *
"Section 6. Covenants and Resolutions Authorizing Issuance of Bonds. That any resolution or resolutions authorizing the issuance of bonds, including refunding bonds, under this Act, may contain covenants as to:
* * * * * *
"(4) The fixing, establishing and collection of such fees, rentals or other charges for the use of the services and facilities of such water system, including any part thereof heretofore or hereafter constructed or acquired, and the revision of same from time to time, as will always provide revenues at least sufficient to provide for all expenses of operation, maintenance and repair of such undertakings, the payment of the principal of and interest on all bonds or other obligations payable from the revenues of such undertakings, and all reserve and other funds required by the terms of the resolution or resolutions authorizing the issuance of such bonds.
* * * * * *
"Section 9. Maintenance of Rates. That the Board of County Commissioners shall prescribe and collect reasonable rates, fees or other charges for the services and facilities of such water system and shall revise such rates, fees or charges prescribed from time to time whenever necessary. The rates, fees, or charges prescribed shall be such as will produce revenues, together with any other pledged funds, at least sufficient (a) to provide for all expenses of operation, and maintenance and renewal of such undertakings, including reserves therefor, (b) to pay when due all bonds and interest thereon for the payment of which such revenues are, or shall have been, pledged or encumbered, including reserves therefor, and (c) to provide for any other funds which may be required under the resolution or resolutions authorizing the issuance of such bonds pursuant to this Act. * * *"
The complaint further alleged that the County had determined it was necessary to revise the Pinellas County water rates so that municipalities not be charged less for water than the cost to the County, and that the Commission determined the cost of furnishing water to Clearwater to be 18¢ per thousand gallons. The prayer of the complaint was that the court decide whether the Clearwater contract bound the County to furnish water at the 5 cent rate during the contract term, and prevented the Board from exercising its discretion with respect to rates as specified in the Special Act.
The City responded to the complaint by filing a motion to dismiss, which the trial judge denied. Subsequently the City filed an answer, incorporating an affirmative defense and a motion to dismiss. The City specifically denied that the actual cost of furnishing water was 18¢ per thousand gallons *203 and averred that the contract was binding on the parties and was not in violation of the Special Act. By way of affirmative defense, the City alleged that the County had full knowledge of all matters alleged in the complaint prior to entering the contract and that the County had acted in pursuance of and acknowledged all sums due from the City, and had derived all possible benefit from the contract; that the County used the contract to obtain court authority to issue bonds and extend its water system; that the City had relied on the contract to the prejudice of its own water system; and that the County had delayed any right of rescission to the material prejudice of the City.
Both parties moved for summary judgment, and the Court granted the County's motion and entered summary judgment for the plaintiffs.
In his order the trial judge found "that the contract between Pinellas County and Defendant, which is the subject matter of this suit, does not obligate Pinellas County during the term of said agreement to furnish water to Defendant at five cents per thousand gallons in derogation of the duty imposed upon the County by Chapter 29442, Laws of Florida, Special Acts of 1953, to prescribe reasonable rates on an equitable basis and to revise the same from time to time whenever necessary." The court specifically found the affirmative defenses of estoppel and res judicata to be without merit, and concluded "that there is no genuine issue as to any material fact and that Plaintiffs are entitled to judgment as a matter of law." The court determined that the County had "the legal authority and duty to revise rates to be charged for water service to all customers and classes of customers, including the Defendant, notwithstanding the existence of a contract purporting to preclude the exercise of this authority and the performance of this duty. * * *"
In reviewing the appropriateness of the order of summary judgment, we observe, as did the trial judge in a preliminary order, that the case does not present a factual dispute regarding the reasonableness of the water rates, or the actual cost to the County of supplying water to the City. The pleadings merely raise the issue of the County's power to contract with regard to rates.
With this view of the issue, we find that our determination will depend in large part on the provisions of the Special Act under which the water system operates. Those portions of the Act dealing with the County's duty to fix the rates on an equitable basis and to revise them whenever necessary are specific and mandatory. The duty to set and revise rates is imposed as a continuing obligation upon the County. The power to contract, on the other hand, is couched in the following broad terms:
"Section 17. Grants and Contributions. The county shall have power to contract with any person, private or public corporation, the State of Florida, or any agency, instrumentality, or county, municipality or political subdivision thereof, or any agency, instrumentality or corporation of or created by the United States of America, or the United States of America, with respect to such undertakings, or any part thereof, and shall also have power to accept and receive grants or loans from the same, and in connection with any such contract, grant or loan, to stipulate and agree to such covenants, terms and conditions as the governing body of the county shall deem appropriate."
Viewing the Act as a whole, we do not believe that the general terms of the section empowering the County to contract may be construed to defeat the specific obligations imposed with regard to rates. Therefore, we agree with the lower court that the County had no power to bind itself to a rate for thirty years, because such a contract precludes the necessary exercise of discretion imposed by the Special Act.
*204 The City has cited, and relies heavily upon, the decision in the City of Gainesville v. Board of Control, Fla. 1955, 81 So.2d 514, from which it is argued that a governmental unit supplying water is then acting in its proprietary capacity and is bound by its contracts in the same manner as a private corporation. In the Gainesville case a group of citizens agreed, on behalf of the City, to have free water furnished to the University of Florida if the Board of Control would decide to locate the University in Gainesville. The City was successful in its endeavor, became the site of the University in 1905 and furnished free water as agreed. Then, in 1950, the City attempted to escape from this forty-five year old water supply commitment, but the Florida Supreme Court ruled the agreement was valid and binding. That case confirms, however, the approach which we have taken here, because the rationale of the Gainesville opinion is that to determine the validity of a contract made pursuant to a Special Act, the specific provisions of the legislation must be considered in light of the overall legislative intent. The Supreme Court in the Gainesville case extensively reviewed the legislation pertaining to locating the University, and concluded that Gainesville was empowered to expend City resources as an inducement.
"So in the Buckman Act and in Section 325 of the Revised Statutes of Florida, the legislature, creator of municipalities, recognized, approved and, at least in some instances, required contributions from city treasuries of monies as a condition to the establishment and maintenance of institutions of learning within their borders.
"Further evidence of the attitude of the legislature with regard to such donations is found in Chapter 5498, Laws of Florida, Acts of 1905, expressly empowering the City of Gainesville to issue bonds for such amount as the city council should determine `for the purpose of securing educational advantages and facilities in or adjacent to such city.' F.S.A. § 282.01.
* * * * * *
"By the express terms of the Buckman Act the Board of Control was given the power `to receive donations' and we construe this provision to authorize acceptance of donations by the City of Gainesville. * * *
"After a careful study of this record, we conclude that the whole pattern for reorganizing and maintaining the educational system offered an opportunity for legal contributions by cities from their funds in order to secure to the citizens the obvious advantages of having institutions located in their midst. True, no express grant of power so to contribute appeared in the Gainesville charter but it was properly implied from the powers expressed." 81 So.2d at 517.
It is apparent that the Special Act in the Gainesville case contemplated donations from the City. Conversely, the legislation in the case before us imposes a continuing duty to revise rates to enable the water system to be financially self sufficient while maintaining a rate structure which operates in an equitable manner. The rate contract in this case operates as a bar to this requisite flexibility and for that reason it is inconsistent with the explicit legislative intent.
Moreover, we are strongly persuaded by the decision of our Supreme Court in City of Tampa v. Tampa Waterworks Co., 1903, 45 Fla. 600, 34 So. 631, aff'd 199 U.S. 241, 26 S.Ct. 23, 50 L.Ed. 170. The Tampa case held that a City ordinance setting a maximum water rate which was less than the rate previously contracted for between the City and a private utility company was valid despite the contract. The court cited Art. 16, Sec. 30, of the Florida Constitution, F.S.A., which provides:
"The Legislature is invested with full power to pass laws for the correction *205 of abuses and to prevent unjust discrimination and excessive charges by persons and corporations engaged as common carriers in transporting persons and property, or performing other services of a public nature; and shall provide for enforcing such laws by adequate penalties or forfeitures."
The court then stated the following:
"* * * The charter of the present city of Tampa, as well as the charter of the water company, were granted, and the contract in question was entered into, after the Constitution went into effect, and the powers granted to the city and the water company to contract, as well as the contract entered into, must be construed in connection with and limited by the constitutional provision referred to. * * * The power mentioned in this section is full power; a continuing, ever-present power. Being irrevocably vested by this section, the Legislature cannot divest itself of it. Neither can it bind itself by contract, nor authorize a municipality  one of its creatures  to bind it by contract, so as to preclude the exercise of this power whenever in its judgment the public exigencies demand its exercise. Full power cannot exist, if by contract that power can be curtailed or impaired. * * *" 34 So. at 639.
The case of City of Naples v. Conboy, decided by the Supreme Court of Florida on October 13, 1965, number 33, 707, involved a contract and two ordinances of the City of Naples. The chancellor ruled them invalid and on appeal, the Supreme Court affirmed the findings that: 1) Ordinances 400 and 615 were invalid; 2) the contract between the municipal corporation and the appellants (developers) was invalid and unenforceable; and 3) the tax authorities of the City should re-assess the property owned by the appellants (developers) involved in this litigation for the years 1962 and 1963; and in effect that the contracts were ultra vires and also barred by Sections 1 and 5, Article IX, of the Constitution of Florida.
We therefore conclude that the duty imposed upon Pinellas County to regulate and revise rates is both a full power and a continuing duty which could not be divested by contract. The trial judge was correct in reaching this result and we affirm his decision.
Affirmed.
SMITH, J., and McNATT, JOHN M., Associate Judge, concur.