ALLEN, Judge,
(ret.).
This is an appeal brought by the appellant, defendant below, from a final judgment entered on the pleadings in an action instituted by the appellee, plaintiff below. For the purposes of this opinion the appellant will be designated as the City and the appellee as the County. The suit instituted by the County was to recover the unpaid balance of an account stated, alleged to be owed by the City for the County’s cost of providing and furnishing water to the City.
The pleadings were filed by the respective parties and motions were made by both parties for a summary judgment. These motions for summary judgment were denied. The County subsequently made a motion for judgment on the pleadings. The trial court granted the County’s motion and a money judgment was awarded.
On January 9, 1962, the County and City entered into an agreement which provided for the County to furnish water to the City at a cost price. Certain portions of that agreement are herein set forth:
“1. County agrees to furnish to City from and through County’s water supply and distribution system, and City agrees to purchase from County potable water of the standards hereinafter described and at a rate which is the present cost of producing and delivering water to said City. Said rate shall be likewise known as the cost price.
“2. County agrees to determine the cost price annually on January 1st of each year and it shall be determined in accordance with Formula attached and made part of this agreement.
“3. County agrees annually to furnish City on January 1 a certified Audit of the Pinellas County Water System, which audit shall be used in establishing cost price of water to be delivered to City for the year ensuing.
if * * ‡
“7. County agrees to construct necessary water transmission main to metering point to be determined and supply water at the cost price of 13.87 cents per 1000 gallons until January 1, 1963, at which time a new cost price shall be established in accordance with details enumerated in Section 2 and 3 contained herein. City agrees to buy said water at cost price established annually. City further agrees to purchase four (4) million gallons per month, which amount shall be known as the minimum, payable at each billing period.
“ * * *
“10. The County agrees to furnish water as provided herein for a period of ten (10) years, beginning March IS, 1962. It is agreed that the City may, at its'option, extend this contract for four (4) consecutive periods of five (5) years each. In order to exercise its option, the City shall, at least 90 days prior to the expiration of any period, notify the County in writing of its intention to continue this contract for such additional period. City agrees to purchase from County all water used by City for resale during the period covered by this contract provided, however, that City may use or purchase water from other sources in case of County’s failure to furnish an adequate supply of water hereunder.”
*530 The Formula attached to the agreement is as follows:
FORMULA
YEARLY COST PRICE OF WATER
FOR ZONE B
“COST OF
SOURCE OF SUPPLY plus POWER & PUMPING plus PURIFICATION
PLUS
40% (INTEREST EXPENSE FOR OUTSTANDING REVENUE CERTIFICATES)
PLUS
40% (TRANSMISSION & DISTRIBUTION plus CUSTOMER’S ACCOUNTING AND COLLECTION plus ADMINISTRATION)
DIVIDED BY
TOTAL GALLONS OF WATER PRODUCED AND METERED TO ALL CONSUMERS
TIMES
(1000)
EQUALS
COST PRICE OF WATER PER 1000 GALLONS DELIVERED TO METERING POINT.
“NOTE 1. CALCULATIONS SHALL BE DETERMINED ANNUALLY PRIOR TO JANUARY 1.
“NOTE 2. ALL EXPENSE FIGURES SHALL BE TAKEN FROM THE CERTIFIED AUDIT PREPARED ANNUALLY BY AN INDEPENDENT AUDITING FIRM EMPLOYED BY COUNTY.
“NOTE 3. TOTAL GALLONS OF WATER METERED AND SOLD SHALL BE FROM ACCUMULATED RECORD FOR PERIOD COVERED BY AUDIT.”
The County was empowered to enter into such contracts for providing water services to municipalities inside its county limits by the Special Act of the Florida Legislature (Ch. 29442, Laws of Florida, Special Acts of 1953). Certain portions of this special act, which are applicable and necessary to the discussion of the instant case, are set forth.
“Section 9. Maintenance of Rates. That the Board of County Commissioners shall prescribe and collect reasonable rates, fees or other charges for the services and facilities of such water system and shall revise such rates, fees or charges prescribed from time to time whenever necessary. The rates, fees, or charges prescribed shall be such as will produce *531 revenues, together with any other pledged funds, at least sufficient (a) to provide for all expenses of operation, and maintenance and renewal of such undertakings, including reserves therefor, (b) to pay zvhen due all bonds and interest thereon for the payment of which such revenues are, or shall have been, pledged or encumbered, including reserves therefor, and (c) to provide for any other funds which may be required under the resolution or resolutions authorizing the issuance of such bonds pursuant to this
Act. Any refunding bonds issued pursuant to this Act shall be deemed to have been issued for the same purpose or purposes for which the bonds or other obligations refunded thereby were originally issued. The provisions of this section shall apply to all bonds issued pursuant to this Act, and this Act shall be construed to require the revenues from such water system, together with other special funds pledged therefor, to be sufficient to make such water system fully self liquidating.
“* * *
“Section 17. Grants and Contributions. The county shall have power to contract with any person, private or public corporation, the State of Florida, or any agency, instrumentality, or county, municipality or political subdivision thereof, or any agency, instrumentality or corporation of or created by the United States of America, or the United States of America, with respect to such undertakings, or any part thereof, and shall also have power to accept and receive grants or loans from the same, and in connection with any such contract, grant or loan, to stipulate and agree to such covenants, terms and conditions as the governing body of the county shall deem appropriate.” (Emphasis supplied)
In its final judgrñent of December 7, 1967, the trial court stated:
“ * * * and the Court having previously found and determined on the authority of City of Clearwater v. Bonsey, 180 So. 2d 200 that the contract dated January 9th, 1962, between the Plaintiff and the Defendant shows on its face that it is void for that it limits or restricts the rate-fixing powers and duties of the County Commission of the County of Pinellas, and that any such limitation or restriction on rate-fixing is necessarily void as being ultra-vires; that is to say, the County’s duties, rights and powers as to rate-fixing, under Chapter 29442, Laws of Florida, Special Acts of 1953, are mandatory and continuing and the County cannot, by contract, be limited or restricted from charging any rate it chooses or determines by a proper exercise of its discretion.”
The appellant presents three points on appeal for our consideration:
1. The Court’s denial of defendant’s motion for summary judgment on plaintiff’s original complaint was erroneous because the pleadings and affidavits clearly showed that the defendant was entitled to a judgment as a matter of law since there was no possible basis upon which plaintiff could have sustained its cause of action.
2. The contract expressly providing for the revision of the rate to be paid by the city, is fully consonant with the special act and in holding otherwise, the court improperly interpreted either the contract or the act.
3. The court erroneously failed to harmonize the Safety Harbor contract with the provisions of the special act as is shown by its denial of the defendant’s motion to dismiss the county’s amended complaint for failure to state a cause of action as well as the court’s subsequent granting of the county’s motion for judgment on the pleadings and consequent money judgment against the city.
The trial court in its ruling rested the decision on the case of Clearwater v. Bonsey, Fla.App.1965, 180 So.2d 200. The Clearwater case came before us from the same trial court, based upon a similar contract for providing water, as the one in the case sub judice.
*532 The contract in the Clearwater case was between the City of Clearwater and Pinel-las County. It. was executed on March 29, 1954. The effective date of the Special Act of 1953 was June 15, 1953. The contract was entered into approximately nine months later.
The terms of the contract called for the County to provide water to the City of Clearwater at the rate of five cents (50) per 1000 gallons of water. The contract was for a period of thirty years. The contract did not call for a revision of the rates unless the electric power cost increased above a certain minimum. The City of Clearwater was obligated under the terms of the contract to pay for an average daily minimum of four million (4,000,000) gallons whether consumed or not. In essence the contract called for providing the water at a set rate for an extended period of time.
The suit for declaratory decree was brought by the Pinellas County Commission against the City of Clearwater to determine its rights and obligations under the contract. In May, 1963, the County Commission passed a resolution declaring that the cost of furnishing water to Clearwater was then 18 cents per thousand gallons, and that this would be the new rate charged if the contract rate could be discharged.
It is interesting to note that the County, in the resolution of May, 1963, set the cost of providing water to all the municipalities in the County at 18 cents per thousand gallons. This resolution applied to the City of Safety Harbor, appellant in the instant case.
The County, in its resolution, stated:
“Municipalities shall be charged the actual cost of furnishing water to such municipalities, the rate to be determined and set with respect to each municipality from time to time by the Board of County Commissioners.
“BE IT FURTHER RESOLVER that the actual cost of furnishing water to municipalities and the rate to be charged said municipalities is determined to be $.18 per thousand gallons.
“BE IT FURTHER RESOLVED that the foregoing rate schedule shall not take effect until such time as a Court of competent jurisdiction determines whether the Board of County Commissioners has legal authority to charge municipalities the actual cost of supplying water to said municipalities contrary to the terms of the outstanding water contracts.
“BE IT FURTHER RESOLVED that the County Attorney be, and he is hereby instructed to file suit in the name of the County Commissioners pursuant to Florida Statute 87 to determine whether the County is bound by the rate provided in water contracts or may adopt different rates under the authority of Chapter 29442, 1953 Laws of Florida.”
The record also reveals that in various resolutions subsequent to the resolution of May, 1963, the County set the wholesale water rates for the municipalities located in the County.
Portions of these resolutions showing the various wholesale water rates are set forth:
9/8/64 Safety Harbor 16.51080 per thousand gallons
2/10/65 Clearwater 13.68340 P.T.G.
Tarpon Springs 13.68340 P.T.G.
Safety Harbor 16.28520 P.T.G.
Largo 18.42980 P.T.G.
Pinellas Park 19.85730 P.T.G.
2/8/66 Clearwater 13.09430 P.T.G.
Tarpon Springs 13.09430 P.T.G.
Safety Harbor 15.71680 P.T.G.
Largo 17.58910 P.T.G.”
*533 A comparison of the various rates set show that only in two instances were any municipalities charged above 18^ per thousand gallons as set in the resolution of May, 1963. Appellant City has never been charged the 18¡é per thousand gallons even though that was stated to be the cost to the County for providing the water service to the City. We note several distinctions in the alleged costs as resolved by the County.
We also question if there is any real distinction between the formula used under the contract and the method used to compute the new water rates. If there is not any real distinction then there would be no reason to set up a new rate schedule. Does the method of computation on the' rates under the contract substantially conform to the requirements for the setting of rates as found in § 9 of Chapter 29442 of Special Acts of 1953? What was the method used in computing the rates as suggested by the consulting engineering firm of Black, Crow & Eidsness, Inc.? What were the factors taken into consideration to determine the cost price in the new rate schedule? The revised rate must of necessity also conform to the requirements of § 9 of Chapter 29442 of Special Acts of 1953. Are the factors used in the new rate schedule sufficiently distinct from the factors indicated in the formula under the contract to warrant a different rate revision to keep up with the current cost of providing the water service?
These questions and many others could not be answered because no evidence was presented. The final judgment was granted on the pleadings. We feel this was error for evidence should have been taken. This case presents issues of fact which can only be resolved after a full evidentiary hearing.
The contract in the Clearwater case, when placed beside the contract in the instant case, reveals some striking distinctions. First, the Clearwater contract was executed on March 29, 1954. This was shortly after the effective date of the Special Act of 1953. The instant contract was executed on January 9, 1962, almost nine years after the passage of the Act.
Second, the rate charged in the Clear-water contract was set at .05^ per thousand gallons for a duration of thirty years with no provision for revision. The rate in the instant contract was to be revised at the beginning of each year by using a formula and an official audit prepared by the County. The duration of the contract was for an initial period of ten years with four options of five years each.
It would appear that the County learned a great deal from the errors in the Clear-water contract and attempted to correct them in the contract in the instant case. It also appears that the Clearwater contract was rigid and inflexible by not keeping up with the actual cost of providing the water service. The contract in the instant case appears to be flexible in keeping up with the actual cost of providing the water service.
The County now seeks a decision that this contract is void because it fails to comply with the requirements of Chapter 29442,. Laws of Florida, Special Acts of 1953. The County states, as did the trial court, that the contract is not in harmony with the Special Act and based upon the authority of Clearwater v. Bonsey, Fla.App. 1965, 180 So.2d 200, it is ultra vires.
The real center of dispute arises around the formula in the contract for determining actual cost and the revised formula used by the County.
The City naturally contends that the contract formula conforms to the requirements of the Special Act. The County contends that it does not. We believe that herein exists a factual dispute which could not be resolved merely by a judgment on the pleadings.
In looking at the case of Clearwater v. Bonsey, supra, we quote from it several statements by this court: (p. 203)
“In reviewing the appropriateness of the order of summary judgment, we observe, as did the trial judge in a preliminary order, that the case does not pre *534 sent a factual dispute regarding the reasonableness of the water rates, or the actual cost to the County of supplying water to the City. The pleadings merely raise the issue of the County’s power to contract with regard to rates.
(t ‡ 5}< # # &
“ * * * Conversely, the legislation in the case before us imposes a continuing duty to revise rates to enable the water system to be financially self sufficient while maintaining a rate structure which operates in an equitable manner. The rate contract in this case operates as a bar to this requisite flexibility and for that reason it is inconsistent with the explicit legislative intent.”
From the record of the pleadings we can see that the factual dispute of reasonable rates is a proper issue in this case. We can also see that the factual dispute of the actual cost of providing the water to the City is a proper issue before the trial court. The dispute can only be resolved after a full presentation of the evidence.
In the County’s amended complaint the term actual cost is used in one paragraph while the term reasonable rates is used in another paragraph. We set out portions of this amended complaint:
“2. On January 9, 1962, the parties entered into a contract whereby Plaintiff agreed to furnish water to Defendant, at cost, according to a formula by which cost was to be determined. A copy of said contract is attached as a part hereof, and is designated Exhibit A;
“3. Subsequent to the execution of the said contract, Plaintiff has designated municipalities as a class of customer to be supplied wholesale water at actual cost. Pursuant to this policy, the Plaintiff, on advice of consulting engineers, has adopted, and from time to time has revised, its formula for determining actual cost. Attached hereto are copies of minutes of the meetings of the governing body of Plaintiff, reflecting water rates, as adopted, and their effective dates, said attachments being designated Exhibits B, C, D, E and F. Pursuant to § 4 of Ch. 29442, Laws of Fla., supra. Plaintiff has also established a service charge for meter service which, for Defendant’s 12" size meter, was $100.00 per month for September, 1964, through December, 1966, but was changed to $70.00 per month for January, 1967, and subsequent months;
“4. Defendant has been billed at the rates and charges established by the Plaintiff, as aforesaid, for water delivered to the Defendant. The Defendant has refused to pay, on the grounds that the Plaintiff is bound by the formula appearing in the contract (Exhibit A), which Plaintiff denies. The rate for water, determined according to the contract formula, results in an amount substantially less than the amount subsequently determined by the Plaintiff to be reasonable rates for providing water to the Defendant;
“5. Defendant has paid Plaintiff for water delivered, according to the contract formula, leaving a balance due to Plaintiff from Defendant of $15,150.94. Attached as a part hereof are the accounts of the Pinellas County water system showing the charges to the Defendant and the balance due, said accounts being designated Exhibit G.”
In paragraph 4, the term actual cost was used but then crossed out and the term reasonable rates was entered.
The City answered the allegations of the amended complaint with specific denials.
The County has further confused the issue of actual cost versus reasonable rates in its Resolution of May, 1963, stated above. In this resolution the term actual cost is used throughout.
It appears that a clarification is needed as to what is the actual cost of providing the water to the appellant city.
*535 The contract in the instant case states that the actual cost will be charged to the City for the water provided by the County. If the contract rate does not reflect the actual cost of providing the water to the City by the County, then it is only reasonable that the City should be expected to pay the actual cost. This must be determined from the evidence.
Looking at the contract in the instant case as compared to the one in the Clear-water case, it appears to have the requisite flexibility intended by the legislature in passing the Special Act. However, to really determine this question a full presentation of the evidence must be given.
We also note from the record that the County system appears to be more than financially self-sufficient. It seems to be operating at a substantial net profit.
However, we are not disposed to answer these questions at the present time. We feel that the pleadings do present proper factual disputes which can only be resolved by a full hearing with evidence and testimony presented.
It must be stated that for the purposes of this opinion we are not overruling our previous decision in Clearwater v. Bonsey, 180 So.2d 200. We are merely finding that based upon the facts of the instant case, Clearwater v. Bonsey, supra, is not authority for granting a judgment on the pleadings. We find great factual differences and disputes in the instant case.
From the language of Clearwater v. Bonsey, supra, as stated above, we find authority to reverse and remand the instant case for a full hearing on the evidence. For if the evidence shows that the contract did have the requisite flexibility and did show the actual cost of providing the water to the City, then reason and logic support its being allowed to stand.
We feel that it was error to grant a judgment on the pleadings in light of the different factual disputes and issues in the instant case. We feel that the better ends of justice and fairness to all compel us to send this case back to the trial court for a full hearing. If further pleadings are necessary then the parties shall be permitted to amend the pleadings to further clarify the issues.
We have carefully considered point one of appellant’s argument and find it to be without merit. This opinion is basically directed to points two and three of appellant’s argument.
We therefore find that on its face the contract in the instant case is not ultra vires based upon Clearwater v. Bonsey, supra. After a full hearing, the evidence in the instant case might prove that the contract is ultra vires but we will leave this determination to the trial court.
Reversed and remanded.
LILES, C. J., and PIERCE, J., concur.