227 So.2d 516 (1969)
CLAY UTILITY COMPANY, a Corporation, et al., Appellants,
v.
CITY OF JACKSONVILLE, Florida, a Municipal Corporation, and Jacksonville Electric Authority, a Corporation, Appellees.
No. L-252.
District Court of Appeal of Florida. First District.
October 9, 1969.
Rehearing Denied November 17, 1969.
Reinstine, Reinstine & Panken, Jacksonville, for appellants.
William L. Durden, Jacksonville, David U. Tumin, Tallahassee, and William Lee Allen, Jacksonsville, for appellees.
WIGGINTON, Judge.
Appellants brought this action as a class suit on their behalf and all others *517 similarly situated seeking a money judgment against appellees, together with a judicial declaration of their rights as authorized by Chapter 86, Florida Statutes, F.S.A. The case was tried by the court without a jury. From an adverse judgment, this appeal is taken.
From the record it appears that prior to October 1, 1968, the City of Jacksonville, a municipal corporation, owned and operated the electrical generating and distribution system in the City of Jacksonville, and furnished electricity to businesses inside the City as well as to businesses outside of the City in Duval, Clay, and Nassau Counties.
On October 1, 1968, the governments of the City of Jacksonville and the County of Duval were consolidated and on that date, pursuant to the applicable provision of law, the City transferred to the Jacksonville Electric Authority, a body politic and corporate, the physical properties and all assets relating to the electric system. The Authority, as required by law, assumed all the obligations and liabilities of the City relating to the system.
Plaintiffs operate businesses outside of the city limits of the City of Jacksonville. Between May 1, 1968, and September 30, 1968, they purchased electricity from the City, and between October 1, 1968, and December 31, 1968, they purchased electricity from the Authority.
Both while the electric system was operated by the City, and since it has been operated by the Authority, plaintiffs were and are now classified as "small business" or "small general service" customers in accordance with rate schedule #25 adopted by appellees, which rate was made applicable to small business or small general service customers outside of the city limits of the former City of Jacksonville, while small business or small general service customers inside of the city limits were charged lesser amounts for electricity in accordance with rate schedule #20 applicable only to them.
By this suit appellants seek a refund of an alleged overcharge representing the difference between the amounts paid for electricity by those falling within rate classification #25, as against the amounts paid by those falling within rate classification #20, which overcharge appellants allege was discriminatory, arbitrary, and unreasonable. The period of time for which a refund is sought is that from May 1, 1968, through December, 1968.
The trial court by its final judgment found and so concluded that appellants had failed to carry their proper burden of demonstrating by the greater weight of credible evidence that there exists no justification for the difference in the rate charged for electricity furnished to those customers outside the limits of the original City in accordance with rate schedule #25, and that charged similar customers inside of the city limits in accordance with rate schedule #20. The court therefore held that appellants had failed to establish that the rate charged them and others similarly situated was discriminatory, arbitrary, unreasonable, and illegal. Appellants contend that such finding and conclusion of the trial court is contrary to the manifest weight of the evidence, erroneous, and should be reversed.
The basic question with which we are confronted is whether a municipality which owns and operates an electric generating and distribution system may lawfully discriminate as to rates between consumers inside and those outside of the geographical limits of the municipality.
A review of the decisions rendered by the courts of other jurisdictions establishes the weight of authority to be that a municipality may not lawfully charge customers outside of its geographical limits more for electricity than that charged similar customers within its limits *518 merely because the former group is outside and the latter group inside the geographical boundaries of the municipality. Such authorities do hold, however, that a different rate may be charged if such is justified because of the difference in cost of furnishing electricity to those outside the City, as compared to the cost of furnishing that commodity to those inside the municipal limits. In order to establish unlawful discrimination, the burden rests on the consumers outside the City to establish by competent evidence that the difference in rates cannot be justified on the basis of the cost of furnishing the commodity to the two different classifications of consumers.[1]
The foregoing general rule has been recognized and adopted as the law of Florida. In the case of Cooper v. Tampa Electric Co.[2] a class suit was brought by electric consumers residing outside of the City of Tampa to restrain the Tampa Electric Co. from discriminating against nonresident consumers of the city by charging them rates for electric power greater than the rates charged those residing inside the corporate limits of the city. In commenting upon the question of law pertinent to the case sub judice, the Supreme Court said:
"* * * The mere fact that customers outside the city are charged different rates for service from those inside the city is no showing of discrimination. There must be positive allegations of fact on which to base this charge.
* * * * * *
"* * * There will also be involved the comparative cost of production and delivery to customers inside and outside the city."
The evidence adduced at the trial establishes without dispute that customers outside the city limits were charged from approximately 19% to approximately 29% more for the same amount of electricity than were similar customers whose businesses were located inside of the city limits. The evidence further shows that as the demand for electricity by consumers outside the City in Duval and the surrounding counties grew, generating plants at a cost of many millions of dollars were built in various sections of Duval County, and heavy transmission lines were erected, in order to meet that increased demand. The total cost of these capital improvements is not definitely shown, but there is enough testimony on this point to indicate that the cost was substantial.
Appellants' expert witness testified that because the widely separated generating plants and substations were so looped together by transmission lines, and the total electrical output so mixed together and distributed throughout the system that it was impossible to ascertain which generating plant was serving which particular part of the three county area, or how far the electric current was being transmitted from any one generating plant to any particular customer either inside or outside the City. Because of these factors appellants' witness testified that in his opinion there was no "discernible" justification for a difference in rates charged to consumers outside as distinguished from the rates charged those inside the city limits.
On the contrary, expert witnesses produced by the City testified that it cost substantially more to construct and extend the high voltage electric lines over long distances to widely scattered customers outside the original corporate limits of the City than it did to furnish electricity through smaller electric lines over shorter distances to customers located in high density areas within the city limits. These witnesses further testified that the expensive installations forming integral parts of the City's generating and transmission system were made almost exclusively for the purpose of supplying electricity to customers outside the limits of the original City.
*519 Based upon the evidence hereinabove summarized, the trial court found that there existed a true and substantial difference in the cost of supplying electricity through larger lines over longer distances to customers outside of the old city limits. Just what such difference in cost amounted to is not shown by the evidence in the record, and the trial court so held. By its final judgment the court opined that while the difference in cost of supplying electricity to appellants as compared to the cost of furnishing customers inside the city limits may not in fact justify the substantial difference in the rates actually charged appellants, that there was no evidence adduced at the trial from which the court could reasonably conclude what the cost difference amounted to and therefore whether the rates charged were discriminatory and illegal. With this observation and conclusion we are inclined to agree.
By their complaint appellants allege that the statute creating and under which appellee Jacksonville Electric Authority operates provides that appellee City shall have the power to appropriate up to 30% of the estimated gross revenues of the Authority for the uses and purposes of the City, which provision appellants allege is unconstitutional and void because it deprives them and others similarly situated of their property without due process of law. They ask for a judicial declaration of their rights and a judgment declaring the above provision of the statute to be void.
It is appellants' theory that the gross revenues derived from the operation of the electrical generating and distribution system must be applied only for the benefit of the customers of the system, and that if any portion of such revenues is appropriated by the City for general municipal purposes, it constitutes a deprivation of appellants' property without due process of law. The trial court held that appellants have brought this action as consumers and customers of appellees' electric system, and not as taxpayers, stockholders, or owners of the system. As such, the court held that once they paid the amount charged them for the electricity furnished, they had no standing to question the manner in which the revenues received by the Authority are utilized. It was therefore the trial court's conclusion that appellants, in their capacities as customers of the system, possess no status which entitles them to challenge the validity of the statute in question. With this conclusion we agree.
We have carefully considered the other contentions urged by appellants but find them to be without merit. The judgment appealed is accordingly affirmed.
CARROLL, DONALD K., Acting C.J., and RAWLS, J., concur.
NOTES
[1] 4 A.L.R.2d 596, 604.
[2] Cooper v. Tampa Electric Co., 1944, 154 Fla. 410, 17 So.2d 785, 786, 787.