PER CURIAM:
Petition for certiorari by the City of Daytona Beach on certification as being of great public interest (without a specific certified question) brings before us for review the opinion of the First District *810 Court of Appeal at 247 So.2d 753 (1971). The district court affirmed the trial judge’s final decree which found with the appellees (as a class of the city’s water customers in the area known as the South Peninsula, south of Frazar Road outside the limits of the City of Daytona Beach.) Fla.Const. art. V, § 4(2) F.S.A. and Rule 4.5(c), Fla. App. Rules, 32 F.S.A.
Appellees rely upon, and seek to hold the city to, a 1954 agreement made by the city. The agreement was initiated for the city to obtain the private water system then operating in that area under the name of South Peninsula Water Co. This was a favorable acquisition to the city which enabled it to expand its system and it was very willing in the agreement to extend a maximum rate which might be charged to the customers of that system not to exceed 1/3 more than what was charged to those in the city itself (133]/3%). This was a real concern to the users, not knowing what the change of ownership might bring, and wishing at least to fix a reasonable add-on to the rate to be charged by a city in which it would have no other voice.
The city has now by ordinance levied a rate of 200%, or double, what city dwellers are paying and this is what the trial court declared invalid, holding the city to its agreement.
Among the more serious contentions of the city are two that are mentioned in the dissent of District Court Judge Dewey M. Johnson:
(1) The agreement is an unreasonable limitation upon the city in charging its rates which would restrict the city in updating and expanding its water system.
(2) The agreement is an unlawful attempt by private agreement contrary to public policy to limit the legislative (governmental) authority of the city.
City of Safety Harbor v. Pinellas County, 218 So.2d 528 (2nd DCA Fla.1969), stands for the principle that so long as such a contract does not require the city to supply water at less than cost, then the contract is not invalid on the- grounds contended. Here the facts clearly show that even the rate of 125% of the in-city rate which was being charged before the attempted increase, was more than the cost. It would also appear to be inherent in the formula of i/3 more than in-city rates that the charge to appellees could never be less than the cost unless the city chose to charge rates to its own residents which were less than cost, inasmuch as the 1/3 more of whatever the city rate, assures an excess charge.
Actually the reasonableness of rates is deferred in this litigation until the present question before the court regarding the contract is resolved. Court scrutiny of the reasonableness is of course subject to review. Cooper v. Tampa Electric Co., 154 Fla. 410, 17 So.2d 785 (1944), and Clay Utility Co. v. City of Jacksonville, 227 So.2d 516 (1st DCA Fla.1969).
The fact that different rates may be charged to other outside users not covered by the original agreement does not defeat that agreement’s purpose and validity for those who are beneficiaries of it.
The flexibility allowed here is different from the inflexible 5‡ flat rate in the contract held so inflexible as to be invalid in City of Clearwater v. Bonsey, 180 So.2d 200 (2nd DCA 1965). There must of course be such flexibility as would avoid a loss to the city. The prerequisite flexibility is present under the formula here, as in Safety Harbor, supra. It is thus seen that the second objection regarding the alleged unlawful limitation on legislative authority of the city is not factually supported.
A further point urged by appellant that the contract is unenforceable turns on the contention that the termination date is not specified and that under the general rule it is therefore terminable by either party upon reasonable notice. Collins v. Pic-Town Water Works, Inc., 166 So.2d *811 760 (1st DCA Fla.1963). Here, however, the circumstances fall within the exception to that general proposition, i. e., where there is a continuing benefit to the city.
In City of Gainesville v. Board of Control, 81 So.2d 514 (Fla.1955), our late, distinguished colleague, Thomas, J., for a unanimous court reasoned: (at pp. 518-519)
“We do not think that the circumstances considered as a whole warrant the construction that the obligation was to exist perpetually, or forever. The time was to be measured by the existence of the university in Gainesville. We take judicial notice of the location as permanent but we do not indulge the clairvoyance that it will be perpetual. Herculaneum and Pompeii were permanent but history records that they were not perpetual.
‡ ifc ‡ ;}s
“The contract contemplated a free service so long as the university remained in Gainesville, a continuing consideration being the exchange of the service for the continuing advantage. The life of the contract is unalterably ‘connected’ with the existence of the university as presently located. We find nothing in the record to support the position that the city was bound only to furnish water as long as it could afford it, or until some arbitrary period subsequently to be determined.”
The remaining contentions including the one attacking this as not being a proper class suit are without merit.
The able trial judge was properly affirmed. The opinion below appears to be consistent with earlier authorities on the subject, leaving no problem of conflict and as certified is correct. Certiorari is accordingly discharged.
ROBERTS, C. J., and ERVIN, CARLTON, BOYD and DEKLE, JJ., concur.