346 So.2d 146 (1977)
Clayton P. BALZER and Blanche Balzer, His Wife, et al., Appellants,
v.
INDIAN LAKE MAINTENANCE, INC., et al., Appellees.
No. 76-1024.
District Court of Appeal of Florida, Second District.
May 25, 1977.
*147 Robert J. Boylston of Grimes, Goebel, Parry, Blue & Boylston, Bradenton, for appellants.
Clinton A. Curtis and Jack P. Brandon of Woolfolk, Myers, Curtis, Craig & Crews, Lake Wales, for appellee Indian Lake Maintenance, Inc.
Marie Alice Crano, Lake Wales, for appellees-intervenors.
HOBSON, Acting Chief Judge.
This case arose in a suit filed by plaintiffs/appellants for a declaratory judgment determining the validity of certain deed covenants providing for the payment of maintenance fees. Plaintiffs particularly assailed the duration of this covenant in that it violated the rule enunciated by this court in Henthorn v. Tri Par Land Development Corp., 221 So.2d 465 (Fla. 2d DCA 1969). The trial court disagreed and entered a final judgment holding the covenants valid and enforceable. We affirm, but for different reasons than given by the trial judge.
The facts in this case are undisputed. Indian Lake Estates is a platted unincorporated subdivision located in Polk County, Florida, consisting of approximately 6,900 acres, divided into 7,287 residential lots, and 665 commercial lots. The plat reflects certain streets, avenues, parks, parkways, and other recreational areas. Title to these areas is vested in the defendant non-profit corporation, Indian Lake Maintenance, Inc., (hereinafter I.L.M.) whose membership is composed of all property owners at Indian Lake Estates. The streets and avenues in the subdivision are not dedicated to the public and are maintained by defendant I.L.M.
Plaintiffs in this cause represent in excess of 1000 nonresident owners of residential lots located in Indian Lake Estates. The Intervenors are 448 owners of residential lots in Indian Lake Estates who currently reside there.
Central to the controversy in this case is the following covenant contained in all deeds and contracts to purchase in the Indian Lake Estates development:
"The purchaser covenants to pay to Indian Lake Estates, Inc., its nominees, successors, or assigns, on January 15 of each year, the sum of $20, for each and every lot purchased, to be used for general maintenance.
"All of the above covenants shall remain in force until January 1, 1966, and shall be automatically renewed for each ten year period thereafter, unless owners of at least two-thirds of the lots in the subdivision known as Indian Lake Estates shall, at least six months prior to any such renewal date, agree in writing to a *148 change in or an abrogation of any of the above covenants, and record such writing so amending the aforesaid covenants."
In a separate legal action referred to by the trial court in the final judgment herein, the Circuit Court of Polk County, Florida, entered a final decree on July 30, 1964, ordering that all maintenance fees collected under the covenant above should be used solely for pruposes of maintenance and that quarterly reports should be made to the court showing the amount of maintenance fees collected and how such fees were spent. Thereafter, on February 16, 1966, in the same earlier case, the court entered an order recognizing the defendant I.L.M. as the successor of Indian Lake Estates, Inc., with regard to the covenants concerning maintenance fees. The record shows that I.L.M. has continued to collect and/or attempted to collect this maintenance fee from the individual owners of lots in Indian Lake Estates since that time.
Following submission of the stipulated facts noted above, and oral argument, the trial court entered a final judgment holding the covenant valid and enforceable, subject only to the limitations contained therein. Careful review of the record and briefs filed in this cause require us to frame the issues as follows:
1. Did the trial court err in refusing to apply the rationale of Henthorn v. Tri Par Land Development Corp., 221 So.2d 465 (Fla. 2d DCA 1969) to the case sub judice; and
2. If so, is the rule enunciated in Henthorn, supra, sufficient to invalidate the maintenance covenant herein?
In Henthorn a similar maintenance agreement was attacked by the successor to the developer.[1] The final judgment of the trial court there, reflecting the position of the developer's successor, held the covenant unenforceable because its duration was not ascertainable and thus was a perpetual charge on real property terminable at will under the doctrine of Collins v. Pic-Town Water Works, Inc., 166 So.2d 760 (Fla. 2d DCA 1964). This court reversed and noted the specific limitation in the deed in Henthorn distinguished it from Collins, supra. Judge Mann went further to state,
"The duration of this agreement is until the first day of January in the year 2000. That is a long time, but by no means indefinite. Thereafter, there is a dependence upon the will of persons then owning the lots and the successor to the developer which is invalid for the same policy reasons which invalidate the remote vesting of property interests, although the interests are distinguishable. See Gray, The Rule Against Perpetuities §§ 329 et seq. (4th ed)."
221 So.2d at 466.
Plaintiffs rely exclusively on the third sentence of the quoted paragraph above. They posit that the covenant sub judice is not void as it may be perpetual, but that under the language of Henthorn, supra, the covenant was valid only until January 1, 1966, at which time it became terminable at will after reasonable notice by any party thereto.[2] Defendant I.L.M. contends that the language contained in Henthorn, and relied upon by plaintiffs, was merely obiter dicta and without persuasive value. I.L.M. *149 further asserts that the trial court was correct in its finding that the covenant is enforceable because: 1) it is not perpetual since it can be canceled at ten-year intervals; 2) even if considered of infinite duration it is enforceable under the "Continuing Consideration  Continuing Advantage" doctrine; and 3) public policy mandates enforcement of such policies. The latter arguments form the basis of the trial court's judgment in favor of the defendant.
At the outset we hold that Henthorn is not sufficiently distinguishable on its facts to have prevented the trial judge from applying the rationale there to the instant case. Moreover, we believe the trial judge mistakenly applied the incorrect legal standard to the facts as stipulated.[3] Nevertheless, we are less than certain that application of the rule in Henthorn, with respect to the renewable periods in this case, is a correct statement of the law, i.e., they are invalid.
In the first place this covenant is more nearly akin to a contractual provision than a restriction placed on the use of the land. The fact that the covenant was included in the contracts to purchase, as well as the deeds to lots in Indian Lake Estates, lends support to this proposition. However, whether the covenant is denominated as a restriction or a contract provision will not alter the definite duration of this provision as it is defined in the deeds of all property owners in Indian Lake Estates. As noted in 8 Fla.Jur. Covenants and Restrictions § 27 (1956), "Where the duration of a restrictive covenant is specifically provided for in the covenant, the covenant must expire by its own terms and limitations." General contract law is similar. 17 Am.Jur.2d Contracts §§ 486, 495 (1964). Cf. 7 Fla.Jur. Contracts § 174 (1956). Thus it is stated at 17 Am.Jur.2d Contracts § 495,
"A contractual provision for termination upon certain conditions can be enforced only in strict compliance with the terms of such conditions.[8] If the contract specifies conditions precedent to the right of cancellation or recission, the conditions must be complied with.[9]" (footnotes omitted)
See also 8 Fla.Jur. Covenants and Restrictions §§ 25-6 (1956).
Aside from Henthorn our research has not revealed any case in Florida passing directly on the validity of a covenant involving comparable renewable periods like those contained in the deeds herein. Yet, we think the authorities cited above, in conjunction with those from other jurisdictions,[4] are sufficient to uphold the maintenance *150 covenant. In so holding we reject the trial judge's conclusion that the factual differences in Henthorn distinguish it entirely from the factual circumstances here. Instead we submit that the language in Henthorn, to wit,
"Thereafter, there is a dependence upon the will of the persons then owning the lots and the successor to the developer which is invalid for the same reasons which invalidate the remote vesting of property interests although the interests are distinguishable"
must be read together with the two sentences preceding it,
"The duration of this agreement is until the first day of January in the year 2000. That is a long time but by no means indefinite."
The legal basis for invalidating the renewable periods in Henthorn then is that they were so remote as to constitute a perpetual obligation on the land over and above a fixed period contained in the deed. At best there would be no termination of the maintenance agreement until the year 2000.
In contrast, the maintenance covenant herein is specifically subject to modification or cancellation at any time within six months prior to the expiration of any ten-year period beginning January 1, 1966. All that is required for modification or cancellation is an agreement in writing which is recorded. There is no charge on the affected lands which even closely approximates a perpetual obligation incapable of abrogation. For that reason the covenant, whether it be labeled contract or restriction, has definite termination dates which are operable within six months of every January 1 occurring every ten years. Therefore, the provision allowing modification of the maintenance covenant contemplates periodic review by landowners subject to the charge. The only limitation on this power to modify, amend, or cancel is the mobilization of the owners of two-thirds of the lots in the subdivision.
Finally, we would point out that this court has, subsequent to Henthorn, upheld the right of developers to provide the furnishing of essential services and bind by covenant owners of subdivision lots to pay for them. Sloane v. Dixie Gardens, Inc., 278 So.2d 309 (Fla. 2d DCA 1973). Moreover, the final judgment below reveals that half, if not more of the funds generated by the maintenance covenant have, since 1966, been expended on necessary items with respect to the general scheme of development. Thus this case falls squarely within the rule enunciated in Hagan v. Sabal Palms, Inc., 186 So.2d 302, 308-9 (Fla. 2d DCA 1966),
"It is undoubtedly the law of Florida that covenants restraining the free use of realty are not favored, but in order to provide the fullest liberty of contract and the widest latitude possible in disposition of one's property, restrictive covenants are enforced so long as they are not contrary to public policy, do not contravene any statutory or constitutional provisions, and so long as the intention is clear and the restraint is within reasonable bounds." (citations omitted)
Accordingly, the final judgment below is affirmed. To the extent that our opinion conflicts with our earlier decision in Henthorn, we recede from the positions taken there.
SCHEB and OTT, JJ., concur.
NOTES
[1] In that case mobile home owners in a subdivision were required to pay an annual charge of up to $120, said charge being directly allocated to the maintenance of the common recreational areas as well as covering necessary utility expenses. This maintenance agreement was limited by a covenant which provided in part,

"These covenants [maintenance charges] are to run with the land and shall be binding on all parties and all persons claiming under them until January 1, 2000, at which time said covenants shall be automatically extended for successive periods of 10 years, unless, by vote of a majority of the then owners of the lots, it is agreed to change said covenants in whole or in part... ."
Henthorn v. Tri Par Land Development Corp., 221 So.2d 465, 466 (Fla. 2d DCA 1969).
[2] It should be noted that the two positions are not substantially different, in substance. In fact plaintiffs, by their second amended complaint, allege that the covenant is a perpetual obligation. In essence plaintiffs' argument is that the renewable periods are perpetual in that they are automatically extended unless affirmative action is taken prior to their renewal.
[3] The trial judge's Conclusions of Law read in pertienet part,

"Plaintiffs rely on the case of Henthorn v. Tri Par Land Development Copr., 221 So.2d 465 ([Fla] 2d DCA 1969) in support of their argument that the Indian Lake Estates covenant creates a perpetual obligation and, therefore, is void for the same policy reasons behind the rule against perpetuities which invalidates the remote vesting of property interests. In the Henthorn case, the developer's successor in interest was attempting to abandon its obligations under a covenant to provide specific services on the basis that the covenant was perpetual and, therefore, terminable at will under the doctrine of Collins v. Pic-Town Water Works, Inc., 166 So.2d 760 ([Fla.] 2d DCA 1964). Factually, the Henthorn case is to be a group of nonresident property owners are attempting to invalidate a restrictive covenant which has been the subject matter of Court supervision since 1966. The Court finds that an exception to the doctrine espoused in Collins v. Pic-Town Water Works, Inc., supra, is where the circumstances give rise to a `continuing consideration  continuing advantage' as was the case in City of Gainesville v. Board of Control, 81 So.2d 514 (Fla. 1955) and City of Daytona Beach v. Stanfield, 258 So.2d 809 (Fla. 1972)."
Although the judicially spawned exception to the rule enunciated in Collins has received relatively recent approval in City of Daytona Beach, it must be recognized that in Collins, and both cases defininf the exception, no time period for duration of the contract was specified. In the instant case the renewable periods are specific, beginning with January 1, 1966. Thus, Collins and its progeny are clearly distinguishable.
[4] Cases construing the validity, construction, and effect of contractual provisions regarding future modification or revocation of covenants restricting the use of real property, are collected in Annot., 4 A.L.R.3d 570 (1965). Only three cases are mentioned as passing directly on the validity of such covenants. However, in none of the latter cases or any of the others contained in the annotation is the precise question posed herein presented.