389 So.2d 283 (1980)
CITY OF POMPANO BEACH, Appellant,
v.
L.M. OLTMAN, Gerald F. Glass and Floyd F. Toomey, and Other Not Named but Made Parties As Members of a Class, Appellees.
No. 78-197.
District Court of Appeal of Florida, Fourth District.
October 8, 1980.
Rehearing Denied November 13, 1980.
*284 Arthur C. Koski of Koski, Mateer & Gillespie, P.A., Boca Raton, for appellant.
Roger H. Harper of Delray Beach, for appellees.
FAGAN, OSEE R., Associate Judge.
The City of Pompano Beach appeals from an adverse final judgment rendered in a class action brought on behalf of users of the city water system. The complaint attacked the validity of a rate ordinance requiring water users outside the city to pay double the rates for in-city users. Plaintiff-appellees sought injunctive relief and an award of money damages for the amount of the alleged wrongful charges.
The suit was brought in May, 1967, and following various evidentiary hearings before the trial judge in 1971 and 1972 a Final Judgment was rendered November 7, 1977 which declared the rates for users of water outside the city to be unjustly discriminatory and illegal. The final judgment awarded a money judgment against the city for the sum of $338,282.10, being only a portion of the difference in revenues collected under the rate ordinance held to be invalid, and the court awarded pre-judgment interest of $189,754.23. The trial judge made his own determination as to the rates that the city should have charged water users outside the city in excess of the rates charged users in the city and awarded interest at 6% on the amounts he found to be excessive for each of the years the rate ordinance was in effect prior to the date of the judgment.
All the property involved here is now included in the corporate limits of the city.
The city has appealed on various grounds and plaintiff-appellees have cross-appealed, *285 agreeing with the city, however, that the trial judge improperly engaged in rate making.
We reverse for the reasons that we now summarize. The findings of fact and conclusions of law were based on two erroneous premises: that the City of Pompano Beach is under a duty to explain and justify its legislative decisions in setting its utility rates and that the city may not charge users residing outside the corporate limits a different rate than that charged within the city (except for actual additional costs of rendering such service). Further the trial judge erroneously engaged in rate making, a legislative function. And finally, the inclusion in the judgment of interest on an unliquidated amount in dispute is clearly erroneous. Bryan and Sons Corp. v. Klefstad, 265 So.2d 382 (Fla. 4th DCA 1972).
The city adopted a rate ordinance in 1965 and an amended ordinance in 1968. The rates charged under both ordinances to users outside the city were double that charged to users within the city. The present suit first attacked the 1965 rate ordinance and was later consolidated with a similar action attacking the 1968 ordinance. Following the close of plaintiffs' evidence the city moved for judgment in its favor and that motion was renewed after plaintiffs were allowed to reopen and present additional evidence. These motions were denied.
Plaintiffs' evidence consisted primarily of the testimony of an expert witness whose entire thesis was that the city earned too high a "rate of return" on its water system and that the "rate of return" was greater from users outside the city than from users within the city. These conclusions were reached by plaintiffs' "expert" by calculations based on assumed and unsupported data from which were drawn the varied conclusions to support an erroneous thesis. The witness testified that the city is entitled to "... no rate of return because everything is taken care of above the line, or within their operations.", that the city is not entitled to make a profit on its investment, "... . they have no equity. The profit is on equity." The witness further testified that the "rate of return" as calculated by him was above 9.9% and "I believe that is an excessive rate of return." After later calculations this witness made new determinations that the "rate of return" for the entire water system was 12.01% with outside users contributing 17.89% and in-city users contributing 9.52%. His later testimony was that an 8% "rate of return" was proper, and that users both in and outside the city were paying rates in excess of those which would produce his determined "reasonable rate of return." In response to a question by the court as to whether there was a recognized increased cost of service to water users outside the city this witness answered, "No sir."
Plaintiff also produced a witness who was then sheriff of Broward County and a former Pompano Beach city commissioner, who testified that additional water rates were charged to those outside the city because of the many advantages otherwise provided by the city to those in proximity to it.
Plaintiff's final witness was the city engineer who testified that additional charges are necessary for water users outside the city because of increased pumping capacity and pressures required, the greater expense of distribution of water to such users, the greater demands on the total system because of such outside additional users in larger feeder mains, additional peak-loading, additional plant capability, and additional well-field and storage capacities required. Such testimony, by which plaintiffs were bound, in no way supported their position.
Inherent in the authority to own and operate a utility is the authority to set reasonable rates and charges for such services and the power to do all things reasonably necessary in the conduct of such functions. Gainesville Gas & Electric P. Co. v. City of Gainesville, 63 Fla. 425, 58 So. 785 (1912); State v. City of Miami, 113 Fla. 280, 152 So. 6 (1933); State v. City of Miami, 155 Fla. 180, 19 So.2d 790 (1944).
*286 A municipality must furnish utility services to all its users at reasonable and non-discriminatory rates, and Florida courts will intervene and strike down utility rate ordinances that are proven to be unreasonable or discriminatory. Storey v. Mayo, 217 So.2d 304 (Fla. 1968).
Utility rate making by municipalities is a legislative function reviewable by the courts as are all legislative actions, but the authority of the courts in such matters is limited to making a judicial determination as to the validity of such rate ordinances. Courts may not engage in rate making, since this is an unlawful incursion in the legislative arena. Cooper v. Tampa Electric Co., 154 Fla. 410, 17 So.2d 785 (1944); Mohme v. City of Cocoa, 328 So.2d 422 (Fla. 1976).
The city has the clear right to charge higher rates to users of its utility system outside the city than to users inside the city. Clay Utility Co. v. City of Jacksonville, 227 So.2d 516 (Fla. 1st DCA 1969); Mohme v. City of Cocoa, supra. The Supreme Court, in Mohme, discussed at length the problems created for Florida cities by those on the urban fringe who enjoy but fail to pay their proportionate share of the cost of municipal services, and concluded that a differential in utility rates is justified to help defray other costs which "... cannot be pinpointed even under sophisticated cost accounting techniques." Mohme, p. 425. That the property and homes of plaintiffs are now within the corporate limits of the city buttresses the observations made by Mr. Justice Sundberg in Mohme.
While its utility rates must be reasonable and non-discriminatory a municipality is entitled to make a reasonable profit from its utility operations and to use the proceeds thus derived for other valid municipal purposes. Hamler v. City of Jacksonville, 157 Fla. 240, 25 So.2d 648 (1946); Town of Riviera Beach v. State, 53 So.2d 828 (Fla. 1951); Pinellas Apartment Ass'n v. City of St. Petersburg, 294 So.2d 676 (Fla. 2d DCA 1974); Contractors & Builders Ass'n v. City of Dunedin, 329 So.2d 314 (Fla. 1976). One may logically ask how can the public be better served than by the provision of municipal services made possible through reasonable earnings of the municipality from reasonable and competitive rates charged to users of its publicly owned and operated utility.
Like other actions taken by legislative bodies, a utility rate ordinance is presumed valid, and the burden rests on those who attack such rates to clearly demonstrate that such rates are arbitrary, unreasonable, or discriminatory. The city has no duty to explain or justify its actions in setting rates until such burden has shifted to it by the establishment of a prima facie case of invalidity based on competent evidence. City of Tampa v. Tampa Waterworks Co., 45 Fla. 600, 34 So. 631 (1903); Clay Utility Co. v. City of Jacksonville, 227 So.2d 516 (Fla. 1st DCA 1969); Mohme v. City of Cocoa, 328 So.2d 422 (Fla. 1976); City of North Miami Beach v. Southern Gulf Utilities, Inc., 339 So.2d 173 (Fla. 1976).
The trial judge incorrectly construed the evidence under the applicable controlling law. Plaintiffs failed to make a prima facie case by competent evidence of the invalidity of the ordinances under attack, and we therefore reverse with directions that a final judgment be entered in favor of defendant, City of Pompano Beach.
REVERSED.
HERSEY, J., concurs.
ANSTEAD, J., concurs specially with opinion.
ANSTEAD, Judge, specially concurring:
I fully concur with Judge Fagan's opinion and holding that the appellees failed in their burden of proof. In addition, I believe that a substantial part of the action was barred by the doctrine of re judicata, there having been a previous disposition adverse to the appellees which was not subsequently appealed or otherwise disturbed.