McNULTY, Chief Judge.
Appellee, City of Pinellas Park, a wholesale customer of appellant county’s water system, filed a complaint herein seeking a declaratory judgment and injunctive relief under its water contract with the county entered into in 1964. Appellee City of Largo intervened seeking like relief under its contract with the county entered into in 1960.
The Pinellas Park contract contained a provision providing for an annual rate revision by the county effective each Janu *107 ary 1. A formula was also established whereby the purchase price was to be the county’s actual cost of producing and delivering water to Pinellas Park. The Largo contract did not contain any specific provision for revising rates at any given time but, as to a purchase price, it provided that the county would charge the city the “standard municipal wholesale rate which may from time to time be fixed and determined by the county.”
Despite the annual January 1 provision of the Pinellas Park contract, the county notified the city in May of 1974 that it was increasing its rates effective July 1, 1974. This action ensued. After like notice to Largo, it intervened herein.
The basic thrust of both cities below was that the new rates sought to be charged by the county were unreasonable, discriminatory, arbitrary and capricious, that they bore no relationship to the actual cost of operating and supplying water to them and that the “actual cost” provision of the Pi-nellas Park contract was an enforceable limitation on the county’s rate-fixing powers. In addition, the City of Pinellas Park contended that the specific annual revision date of January 1 as provided for in the contract was binding and that the county could not revise the rates until the next ensuing January 1.
The county, on the other hand, argued that the new rates were indeed reasonable and equitable, that the new rates were necessary to maintain the water system in a “self-liquidating” position as required by the special act creating the system,[1] and that the contract formula of “actual cost” could not be enforced as against the duty imposed upon it by the act to revise the rates “from time to time” on an “equitable basis.” Additionally, and for the same reasons, the county insisted that it was not bound by the provisions of the Pinellas Park contract specifying an annual date for revision of rates.
After full trial on these issues, the trial court held:
(1) That the new rates were valid and equitable.
(2) That as between the City of Pinel-las Park and the county the new rates met not only the criteria of the contractual formula but also the criteria mandated by the special act of 1953, supra.
(3) That the annual revision date in the Pinellas Park contract was reasonable and enforceable.
(4) That the rate formula in the City of Largo contract, to wit: the “standard municipal wholesale rate” could not be effective until equally applicable to Pinellas Park, and was therefore also governed by the January 1 revision date as aforesaid.
The court thereupon enjoined the county from effectuating and charging the new rates prior to January 1, 1975.
The county appeals the finding of the trial court that the annual revision date of January 1 is valid and enforceable. Both cities cross-appeal the finding that the new rates were reasonable and equitable. Pi-nellas Park additionally appeals the holding that the “actual costs” formula was met.
We affirm the finding of the trial court that the revised rates are reasonable and equitable. There was more than sufficient competent substantial evidence to support these conclusions.
We also affirm the finding that the new rates met the criteria of the contractual formula and the holding that they also met the criteria mandated by the special act of 1953, supra. The real dispute between the cities and the county with respect to the “formula” rate is that the county based the new rates on certain calculations of costs which cranked in bond retirement charges, *108 expenses of operation, maintenance, renewal of the system and assessment of costs for tangible assets. The cities contend that many of these criteria are not predicated on audits of actual costs but are projections made on estimates. The cities also argue that the new rates inflate the actual costs and result in disproportionate charges to wholesale customers inuring to the benefit of retail customers. The record clearly supports the trial judge’s resolution of the parties’ differences in the matter.
With respect to the criteria mandated by the special act, the court was equally correct in that the evidence supports a finding of compliance by the county of its continuing statutory duty to revise rates on an “equitable” basis,[2] that is to say, fairly and reasonably between and among all current classes of retail and wholesale customers. In any case, this duty cannot be inflexibly limited or frustrated by contract so the special act itself would control even if it conflicted with the provisions of the contract.[3]
Coming now to the annual January 1 revision date in the Pinellas Park contract, we also agree with the trial judge that such a revision date is not violative of the special act nor is it an ultra vires limitation or restriction on the county’s continuing duty under the act to revise the rates “from time to time whenever necessary.” The question is one of reasonableness ; and there are any number of reasons why the cities and the county would seek to agree to a reasonable periodic date for a revision of rates so that mutual fiscal considerations, purchasing and maintenance considerations, new hookup projections and budgeting and taxing conveniences might be accommodated. The fixing of such a date, having a rational basis in reasonable mutual convenience, is not a “limitation” or a freezing of the county’s continuing duty to revise rates; rather, indeed, such a provision may be said affirmatively to promote the performance of that duty by providing a known schedule periodically to revisit it. The provision is a valid, reasonable and enforceable one and the trial court was correct in giving it effect.[4]
We must differ with the trial judge with respect to the City of Largo, however, and can find no basis to preclude the county from exercising its proper function in revising the rates as against that city. The mere fact that it had contracted with the City of Largo to charge them “standard municipal wholesale rates” didn’t require that the county wait until all cities which may be affected by such rate be charged it. The record reflects that there are • five major municipal wholesale customers of the county system some of which (depending upon their contracts with the county in which there are annual revision dates similar to the one herein with Pinel-las Park) will be amenable to the new “standard” rates at differing times. Largo’s contract has no such revision date and we can see no justification for giving Largo the benefits of someone else’s contract nor imposing upon the county an obligation, vis-a-vis Largo, which it has not undertaken.
We have considered the other points argued by the parties and find them to be without merit.
In view whereof, the judgment appealed from should be, and it is hereby, affirmed insofar as it relates to th'e contract between the appellant county and the appellee City of Pineallas Park; it should be, however, and it is hereby, reversed insofar as *109 it related to the contract between the county and the City of Largo, and the revised rates of the county should be effective as against the City of Largo as of July 1, 1974. The case is remanded for further proceedings not inconsistent herewith.
HOBSON and SCHEB, JJ., concur.

. Chapter 29442, Laws of Florida, Special Acts 1953.

. Chapter 29442, Laws of Florida, Special Acts 1953, § 4(4).

. See City of Clearwater v. Bonsey (Fla.App. 2d, 1965), 180 So.2d 200. Cf. City of Safety Harbor v. Pinellas County (Fla.App.2d 1969), 218 So.2d 528.

.Cf. City of Safety Harbor v. Pinellas County, id.