497 So.2d 889 (1986)
STATE of Florida, Appellant,
v.
James E. BILLIE, Appellee.
No. 85-1539.
District Court of Appeal of Florida, Second District.
September 26, 1986.
As Clarified on Denial of Rehearing November 14, 1986.
*890 Jim Smith, Atty. Gen., Tallahassee, and Ann Garrison Paschall, Asst. Atty. Gen., Tampa, for appellant.
Michael L. Kobiolka, Hollywood, for appellee.
Dan R. Stengle, Gen. Counsel, Florida Game and Fresh Water Fish Com'n, Tallahassee, amicus curiae.
SCHEB, Judge.
The state appeals the trial court's dismissal of an information against appellee James E. Billie. We have jurisdiction under Florida Rule of Appellate Procedure 9.140(c)(1)(A). We reverse.
The state's amended information charged that on December 1, 1983, in Hendry County, Billie "did unlawfully kill a member of Florida's endangered species as defined in Florida Statutes 372.072(3), to-wit: One Florida Panther, in violation of Florida Statutes 372.671... ." Later, the state supplied a bill of particulars stating that the charged offense occurred on the Big Cypress Reservation.
Billie moved to dismiss the information pursuant to Florida Rule of Criminal Procedure 3.190. Judge James R. Adams, who was originally assigned to the case, denied the motion. The case was then assigned to Judge Hugh D. Hayes.
Subsequently, Billie filed a motion for rehearing attacking the trial court's subject matter jurisdiction. He contended that United States v. Dion, 752 F.2d 1261 (8th Cir.1985), supported his motion to dismiss on jurisdictional, as well as religious, grounds. At the hearing on the motion, the state stipulated that Billie was an enrolled member of the Seminole Indian Tribe, the incident occurred on the Seminole Reservation, and the record did not reflect that the panther was killed or used for commercial purposes.
On July 9, 1985, the trial judge dismissed the information saying that 18 U.S.C.A. § 1162 (1984) contained a savings clause preserving the Seminoles' hunting and fishing rights. The judge specifically adopted the principle in United States v. White, 508 F.2d 453 (8th Cir.1974), and United States v. Dion, 752 F.2d 1261 (8th Cir.1985), that Congress could not regulate on-reservation treaty rights through federal conservation laws without expressly abrogating such rights. Thus, the judge reasoned that the Federal Government did not have jurisdiction to protect endangered species on Indian reservations, and the state, therefore, could not have a greater authority than that given to it by the Federal Government. The trial judge further ruled that section 372.671 was merely a part of the state's civil-regulatory scheme over hunting and fishing and that the attachment of a criminal penalty to it did not make violation of the statute a crime.

I. THE ISSUES BEFORE US
At the outset, we reject the state's argument that the trial court erred in granting a rehearing on Billie's motion to dismiss. While the Florida Rules of Criminal Procedure do not authorize motions for rehearing, lack of subject matter jurisdiction is fundamental error which can be raised at any time, even at the appellate level. Page v. State, 376 So.2d 901 (Fla. 2d DCA 1979). Billie's motion for rehearing represents a challenge to subject matter jurisdiction; therefore, the trial judge correctly entertained the motion.
*891 The state also seeks reversal of the trial court's order on two substantive grounds. First, it argues that the trial court erred in concluding that section 372.671 was a civil-regulatory rather than a criminal-prohibitory statute. Second, it contends that the court erred in effectively determining that the state lacked jurisdiction to prosecute Billie for the offense charged. We agree on both points.

II. BACKGROUND CONCERNING LEGAL STATUS OF INDIANS
We commence our discussion with some background material on the legal status of the Seminole Indians. In 1911, President Taft issued Executive Order No. 1379 creating the Big Cypress Indian Reservation for the Seminole Indians in southern Florida. Indian reservations created by such orders normally carry with them the same implicit hunting rights as do reservations created by treaties. United States v. Dion, ___ U.S. ___, ___ n. 8, 106 S.Ct. 2216, 2223 n. 8, 90 L.Ed.2d 767 (1986); Antoine v. Washington, 420 U.S. 194, 95 S.Ct. 944, 43 L.Ed.2d 129 (1975). Therefore, the Seminoles unquestionably have traditional Indian hunting rights on the Big Cypress Indian Reservation.
The Indian Reorganization Acts of 1934 and 1935, 25 U.S.C.A. § 476 (1983), authorize Indian tribes on reservations to adopt constitutions and by-laws which must be ratified by the Secretary of the Interior or his authorized representative. Pursuant to these Acts, the Seminole Tribe adopted a constitution and by-laws which were ratified by the Secretary of the Interior in 1957.
Also, 18 U.S.C.A. § 1162 allows states to obtain jurisdiction over criminal offenses committed by or against Indians on Indian reservations. Former section 7 of this act granted states the right to assume such criminal jurisdiction by legislative enactment. See 67 Stat. 590 (1953). Florida assumed this jurisdiction by enacting section 285.16, Florida Statutes (1961).[1] Although section 7 of 18 U.S.C.A. § 1162 was repealed in 1968,[2] the cession of jurisdiction to Florida was not affected. Seminole Tribe of Florida v. Butterworth, 658 F.2d 310 (5th Cir.1981). Thus, Florida's assumption of criminal jurisdiction over Indian reservations remains in full force and effect.

III. WHETHER SECTION 372.671 IS A CIVIL-REGULATORY OR CRIMINAL-PROHIBITORY STATUTE
In our analysis of whether section 372.671, Florida Statutes (1983), is criminal and prohibitory in nature, or whether it is merely regulatory, we first note that section 372.671 makes it a felony of the third degree for any person to kill a Florida panther. The maximum term of imprisonment for a third-degree felony is five years. § 775.082(3)(d), Fla. Stat. (1983).
Billie cites the fifth circuit's opinion in Seminole Tribe of Florida v. Butterworth, 658 F.2d 310 (5th Cir.1981), for the proposition that the inclusion of penal sanctions in a statute does not automatically classify it as criminal. There, the fifth circuit held that section 849.093, Florida Statutes (1981), permitting bingo games to be played by certain qualified organizations subject to state restrictions was a civil-regulatory statute which could not be enforced against the Seminole Indians pursuant to Bryan v. Itasca County, 426 U.S. 373, 96 S.Ct. 2102, 48 L.Ed.2d 710 (1976). 658 F.2d at 313. The fifth circuit found that the statute as originally enacted contained no penal sanctions, indicating "a legislative intent that the statute be construed as regulatory." *892 658 F.2d at 314 n. 6. Finally, it did not appear to the court that bingo contravened the public policy of the state of Florida, since it fell into a category of gambling that the state had chosen to regulate rather than proscribe. See 658 F.2d at 316.
Of course, section 372.671 does not regulate the killing of panthers. Rather, it makes it unlawful for any person to kill a Florida panther, an endangered species. In addition to outlawing the killing of the animal, the legislature has created the Florida Panther Research and Management Trust Fund, including expenditures for educating the public "concerning the value of the panther and the necessity for panther management." § 372.672, Fla. Stat. (1983); see also § 372.072(2), Fla. Stat. (1983). Thus, we believe the legislature clearly intended section 372.671 to be a criminal-prohibitory statute.

IV. WHETHER THE STATE LACKED JURISDICTION TO PROSECUTE BILLIE
We now turn to the state's second substantive argument. The court's reason for determining that the state lacked jurisdiction to prosecute Billie appears grounded on the proposition that federal law has preempted the field of legislation regarding Indian hunting rights. This preemption argument is founded on three grounds: (1) 18 U.S.C.A. § 1162(b), (2) the eighth circuit's decisions in Dion and White, and (3) the Endangered Species Act, 16 U.S.C.A. § 1531, et seq. (1985). We address each ground in turn.

A. State Jurisdiction Over Offenses Committed By Indians On Indian Reservations
First, 18 U.S.C.A. § 1162(b) provides an exception for state jurisdiction of offenses committed by Indians:
(b) Nothing in this section shall authorize the alienation, encumbrance, or taxation of any real or personal property, including water rights, belonging to any Indian or any Indian tribe, band, or community that is held in trust by the United States or is subject to a restriction against alienation imposed by the United States; or shall authorize regulation of the use of such property in a manner inconsistent with any Federal treaty, agreement, or statute or with any regulation made pursuant thereto; or shall deprive any Indian or any Indian tribe, band, or community of any right, privilege, or immunity afforded under Federal treaty, agreement, or statute with respect to hunting, trapping, or fishing or the control, licensing, or regulation thereof.
Billie argues that, pursuant to this subsection, the state lacks authority to oversee the taking of panthers because any attempt to do so would infringe on his traditional hunting rights. Thus, he concludes that he could not be charged with the unlawful killing of a Florida panther. We agree that this subsection allows Billie to hunt game on the reservation; however, the United States Supreme Court has said that an Indian's right to hunt pursuant to executive order can be regulated by the need to conserve a species. See Washington Game Department v. Puyallup Tribe, 414 U.S. 44, 49, 94 S.Ct. 330, 334, 38 L.Ed.2d 254, 258 (1973) (Puyallup II); see also Puyallup Tribe v. Washington Game Department, 433 U.S. 165, 175, 97 S.Ct. 2616, 2622, 53 L.Ed.2d 667, 676 (1977) (Puyallup III).

B. The Eighth Circuit's Decisions In Dion and White
The trial court relied heavily on the eighth circuit's opinions in United States v. Dion and United States v. White. Those cases concerned individuals from the Red Lake Chippewa and Yankton Sioux tribes who hunted eagles in violation of the Bald Eagle Protection Act, 16 U.S.C.A. § 668, et seq. (1985). In addition, Dion and some other members of the Yankton Sioux Tribe were charged with taking eagles in violation of the Endangered Species Act, 16 U.S.C.A. § 1531, et seq. (1985). Dion, 752 F.2d at 1262. Conceding that Congress has the power to abrogate or modify the provisions *893 of an Indian treaty, Lone Wolf v. Hitchcock, 187 U.S. 553, 23 S.Ct. 216, 47 L.Ed. 299 (1903), the eighth circuit nevertheless concluded that in enacting the two acts Congress had not explicitly overruled treaties with the Chippewa and Sioux which otherwise would permit the taking of eagles. Dion, 752 F.2d at 1265-1270; White, 508 F.2d at 456-9.
Since the trial court's ruling, the United States Supreme Court has reversed in part the eighth circuit's decision in Dion. See United States v. Dion, ___ U.S. ___, 106 S.Ct. 2216, 90 L.Ed.2d 767 (1986). The Supreme Court reviewed past decisions dealing with legislative modification of Indian treaties and found differing standards for determining how the requisite clear and plain intent must be demonstrated. ___ U.S. ___, 106 S.Ct. at 2220-21. The Supreme Court concluded that while an express statement of Congress may be preferable, it would not rigidly interpret that preference as a per se rule where the evidence of congressional intent to abrogate was sufficiently compelling. Id. The Supreme Court said that in enacting the Eagle Protection Act, Congress had explicitly abrogated Dion's Indian treaty right to hunt the bald eagle. ___ U.S. at ___, 106 S.Ct. at 2221-23. The Act itself allowed the taking of eagles for religious purposes of Indian tribes upon a determination that such taking was compatible with the preservation of the bald eagle so that an Indian could take an eagle under a permit. Id. Thus, the Supreme Court held that the Eagle Protection Act divested Dion of his treaty right to hunt bald eagles; therefore, he could not assert such a hunting right as a defense to the charge of shooting four bald eagles on an Indian reservation in violation of the Endangered Species Act. ___ U.S. ___, 106 S.Ct. at 2223-24. The Court, however, refused to resolve the question of whether Congress abrogated Indian treaty rights when it enacted the Endangered Species Act. Id.
The United States Supreme Court's decision in Dion is useful for illustrating that Indian hunting rights are not altogether immune from outside governmental interference. Yet, the case before us presents a different question from that faced in Dion. Here, we must determine whether a state government's criminal statutory prohibition against killing an endangered species may be applied to Indians on their reservations.

C. The Federal Endangered Species Act
We disagree with Billie's contention that the Endangered Species Act, 16 U.S.C.A. § 1531, et seq., preempts to the federal government the right to legislate concerning endangered species.
The Endangered Species Act and its related federal regulations prohibit the taking or killing of endangered species like the Florida panther. 16 U.S.C.A. §§ 1538 and 1532(6) and (19); 50 C.F.R. §§ 17.21, 10.12 and 17.11 (1985).
One of the congressional findings in that Act says that:
encouraging the States and other interested parties, through Federal financial assistance and a system of incentives, to develop and maintain conservation programs which meet national and international standards is a key to meeting the Nation's international commitments and to better safeguarding, for the benefit of all citizens, the Nation's heritage in fish, wildlife, and plants.
16 U.S.C.A. § 1531(a)(5). Moreover, one of the Act's declared policies is that the "Federal agencies shall cooperate with State and local agencies to resolve water resource issues in concert with conservation of endangered species." 16 U.S.C.A. § 1531(c)(2).
16 U.S.C.A. § 1535(f), dealing with conflicts between federal and state laws, provides:
Any State law or regulation which applies with respect to the importation or exportation of, or interstate or foreign commerce in, endangered species or threatened species is void to the extent that it may effectively (1) permit what is prohibited by this chapter or by any regulation which implements this chapter, or *894 (2) prohibit what is authorized pursuant to an exemption or permit provided for in this chapter or in any regulation which implements this chapter. This chapter shall not otherwise be construed to void any State law or regulation which is intended to conserve migratory, resident, or introduced fish or wildlife, or to permit or prohibit sale of such fish or wildlife. Any State law or regulation respecting the taking of an endangered species or threatened species may be more restrictive than the exemptions or permits provided for in this chapter or in any regulation which implements this chapter but not less restrictive than the prohibitions so defined.
See also 50 C.F.R. § 10.3 (1985).
Thus, the Endangered Species Act and the regulations promulgated pursuant thereto do not specifically preempt state law in the conservation area. Only state laws that allow actions that the federal law precludes are prohibited. Consequently, the Florida legislature, which has the right to prohibit the killing of the Florida panther, has properly imposed stricter penalties which the Endangered Species Act allows states to do. Cf. 16 U.S.C.A. § 1540(b).
The Endangered Species Act provides for the taking of endangered species by permit for specific purposes or for exemption from the Act in certain hardship cases. 16 U.S.C.A. § 1539(a)-(d). There is no showing that Billie killed this panther under such conditions. Moreover, the Endangered Species Act abrogates any inherent rights the Seminole Indians may have for hunting the Florida panther, since only Alaskan native Indians are specifically exempt from the Act. 16 U.S.C.A. § 1539(e); 50 C.F.R. § 17.5 (1985). In expressly exempting only Alaskan Indians, we must presume Congress did not intend to exempt any other Indian tribes. See Tennessee Valley Authority v. Hill, 437 U.S. 153, 188, 98 S.Ct. 2279, 2298, 57 L.Ed.2d 117, 142 (1978). Since the Act does not preempt state legislation and Billie as a Seminole is not expressly exempted from the Act, the state could properly charge him with unlawful killing of a Florida panther.

V. ADDITIONAL ASPECTS TO BE CONSIDERED

A. Possible Conflict Between Statutes
In addition to the rights that are enjoyed by the Seminoles by virtue of their dealings with the Federal Government, the State of Florida has granted additional rights in the Big Cypress area. Section 285.09(1), Florida Statutes (1983), provides that members of the Miccosukee and Seminole tribes may "take wild game and fish at any time within the boundaries of their respective reservations and in the exercise of hunting, fishing, and trapping rights within the Big Cypress Preserve ... provided that game may be taken only for food for the Indians themselves." (Emphasis added.) Section 380.055(8), Florida Statutes (1983), grants the tribe its "usual and customary use and occupancy of the lands and waters within the Big Cypress Area, including hunting, fishing, and trapping on a subsistence basis and traditional tribal ceremonials." (Emphasis added.)
Billie also suggests that sections 285.09(1) and 380.055(8), Florida Statutes (1983), are exceptions exempting him from the purview of section 372.671. We disagree and conclude that no conflict exists between section 372.671 under which Billie was prosecuted and sections 285.09(1) and 380.055(8). It is a general rule of statutory construction that a more specific statute covering a particular subject is controlling over one covering the same subject in general terms. Kiesel v. Graham, 388 So.2d 594 (Fla. 1st DCA 1980). Sections 285.09(1) and 380.055(8) are regulatory in nature and generally provide that Indians may hunt for wild game on the reservation for food. We think, therefore, that section 372.671, which is a criminal-prohibitory statute, controls over the other two statutes because it specifically addresses the subject of an endangered species, i.e., the Florida panther.

*895 B. The Religious Aspect

Finally, the trial judge noted that, while it was not critical to the issue, panthers were used in tribal religious and ceremonial purposes and no commercial selling activity existed in this case.
The extent to which a governmental interest in endangered species protection may override the right to engage in religious practices that may jeopardize such species is not clear. The Supreme Court's recent opinion in United States v. Dion strongly suggests that species protection is the more compelling factor. Billie contends, and the trial judge held, that the state in the information had to refute the contention that the panther was used for food or religious purposes. Again, we disagree. There was some suggestion in the record that the Seminoles may use the panther in traditional tribal ceremonies. However, there was no indication that this particular panther was intended for such usage. At this point, we decline to speculate further on this First Amendment question since it is not properly before us. Suffice it to say, such arguments are better raised as affirmative defenses to the charge at trial.

VI. CONCLUSION
We hold that the state may charge Billie with unlawfully killing a Florida panther in violation of section 372.671, a criminal-prohibitory statute, since federal law does not preempt state legislation in this area. Justifications for even the strictest legislation are numerous, even though often unquantifiable: aesthetic considerations, genetic diversity, scientific curiosity, and the economic impact of the depletion of recognizably useful varieties. See, e.g., Tennessee Valley Authority v. Hill, 437 U.S. 153, 98 S.Ct. 2279, 57 L.Ed.2d 117 (1978). It is in furtherance of and to emphasize this serious commitment to species preservation that the legislature has made the killing of Florida panthers a criminal offense.
A statute such as Section 372.671 is not merely an extension of the state's power to monitor the commercial and recreational harvest of wildlife. Unlike such activities as hunting and fishing, where there may exist a presumption that "a person who wants to hunt or fish merely has to pay a fee and obtain a license," United States v. Marcyes, 557 F.2d 1361, 1364 (9th Cir.1977), there is no intent merely to regulate threatened creatures. Rather, the state has intervened to prevent the outright disappearance of these particular species for additional reasons not necessarily related to sport or subsistence. Because the last habitat of the Florida panther overlaps the Big Cypress Reservation, to except these lands from the operation of the statute would circumvent the legislature's legitimate and laudable efforts to save the panther. Cf. Puyallup III; United States v. Marcyes, 557 F.2d at 1364. The Seminoles do not have the right to hunt the very last living Florida panther. See Puyallup II, 414 U.S. at 49, 94 S.Ct. at 334, 38 L.Ed.2d at 258.
Accordingly, we vacate the trial court's order and reinstate the state's amended information charging Billie with the unlawful killing of a Florida panther, pursuant to section 372.671, Florida Statutes (1983).
DANAHY, C.J., and HALL, J., concur.
NOTES
[1] Subsection 285.16 provides that:

(1) The State of Florida hereby assumes jurisdiction over criminal offenses committed by or against Indians or other persons within Indian reservations and over civil causes of actions between Indians or other persons or to which Indians or other persons or parties rising within Indian reservations.
(2) The civil and criminal laws of Florida shall obtain on all Indian reservations in this state and shall be enforced in the same manner as elsewhere throughout the state.
[2] See Pub.L. No. 90-284, Title 4, § 403, 82 Stat. 79 (1968).